

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

*********************************

**UNITED STATES OF AMERICA**

     **v.**

**MARIO ROLLA**
**A/K/A MIKE ROLLA**
     **Defendant.**

**Criminal Action No.**
**07-CR-142(DNH)**

**PLEA (AND COOPERATION)**
**AGREEMENT**

*********************************

GLENN T. SUDDABY, United States Attorney for the Northern District of New York, by Craig A. Benedict, Assistant United States Attorney, and MARIO ROLLA, also known as (and known hereafter as) MIKE ROLLA, with David Zukher, Esq., his attorney, hereby enter into the following Plea Agreement regarding the disposition of certain criminal charges against the Defendant:

1.    In return for the consideration described below, MIKE ROLLA agrees as follows:

    a.    The Defendant will waive indictment and enter a plea of guilty to a one-count Information charging him with a conspiracy to violate the Clean Air Act, in violation of 18 U.S.C. § 371.

      b.     The Defendant will cooperate with the United States in the investigation and prosecution of others, as more fully set forth below.

    2.    **Potential Penalties.** MIKE ROLLA understands that his guilty plea will subject him to the following potential penalties:

      a.     <u>Maximum term of imprisonment</u>: five years.  (18 U.S.C. § 371)

      b.     <u>Supervised Release</u>:  In addition to imposing any other penalty, the sentencing Court may require the Defendant to serve a term of supervised release of up to three years, to begin at the expiration of any term of imprisonment imposed upon him/her.  (18 U.S.C. § 3583)  Should the Defendant be placed on a term of supervised release and subsequently violate any of the terms and conditions of that release before the expiration of such term, he may be sentenced to up to  two years imprisonment in addition to any prison term previously imposed upon him and in addition to the statutory maximum term of imprisonment set forth above.  Under some circumstances, the Court may also extend the term of supervised release, and it may modify, reduce, or enlarge the conditions of such release.

      c.     <u>Maximum fine</u>: $250,000.  (18 U.S.C. § 3571(b)(3))  In its discretion, the Court may impose an alternative fine of the greater of twice the pecuniary gain to the Defendant or loss to any victim resulting from the offense of conviction.  (18 U.S.C. § 3571(d))

d.     Mandatory Restitution: Pursuant to the Mandatory Victim Restitution Act, the sentencing Court must order that the Defendant pay restitution to any victim of the offense of conviction.  (18 U.S.C. § 3663A)

e.     Special Assessment:  The Defendant will be required to pay an assessment of $100, which is due and payable at the time of sentencing.  (18 U.S.C. § 3013) The Defendant agrees to deliver a check or money order to the Clerk of the Court in the amount of $100, payable to the U.S. District Court at the time of his sentencing.

f.     Interest and penalties: Interest and penalties may accrue, as a matter of law, on any unpaid financial obligation imposed as part of the Defendant's sentence, from as early as the date of sentencing.

g.     Collateral Consequences: Conviction of a felony under this Agreement may result in the loss of certain civil rights, including, but not limited to, the right to vote or the right to possess firearms.

h.     MIKE ROLLA understands that the sentence to be imposed upon him is within the discretion of the sentencing Court, subject to the statutory maximum  penalties and the provisions of the Sentencing Reform Act and the United States Sentencing Guidelines promulgated thereunder, as modified by *United States v. Booker* and *United States v. Fanfan*, 534 U.S. __, 125 S. Ct. 738 (January 12, 2005).  In imposing the sentence, the Court must take into account the Sentencing Guidelines, along with the other factors set forth in 18 U.S.C. § 3553(a).  While the Court is not ultimately bound to impose a sentence

3

within the applicable Sentencing Guidelines range, its sentence must be reasonable based upon consideration of all relevant sentencing factors.

3.      In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees fully to disclose all assets in which he has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. The Defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The Defendant promises that his financial statement and disclosures will be complete, accurate and truthful.

4.      MIKE ROLLA agrees to cooperate with the United States as follows:

a.      The Defendant will truthfully disclose all information with respect to the activities of the Defendant and others concerning all matters about which the U.S. Attorney's Office and law enforcement agencies designated by this Office may inquire of him.

b.      The Defendant will cooperate fully with the U.S. Attorney's Office and the designated law enforcement agencies, in any manner requested, in any criminal investigation.

c.      The Defendant will testify truthfully before the grand jury and/or at any trial or other proceeding with respect to any matters about which he may be questioned.

4

d.      The Defendant will not reveal his cooperation or any information with respect to any related investigation or prosecution to anyone, without the prior consent of the U.S. Attorney's Office.

e.      The Defendant will at all times give complete, truthful, and accurate information and testimony. The Defendant will neither attempt to protect any person who has been involved in criminal activity, nor will he falsely implicate anyone in criminal activity. The Defendant understands that he is entitled to have an attorney present at any session during which he provides testimony, information or other cooperation to the U.S. Attorney's Office or any designated law enforcement agency pursuant to this Agreement. The Defendant hereby waives any right to have an attorney present at such sessions unless and until the Defendant or his attorney expressly informs the Assistant U.S. Attorney or designated law enforcement agent that the attorney's presence is desired.

f.      The Defendant consents to adjournments of sentencing pending the completion of his cooperation, as determined to be necessary by the U.S. Attorney's Office.

g.      The Defendant will not commit any further crime whatsoever, nor will he violate any condition of release or supervision imposed by the Court.

5.      **Elements of the Offense.** MIKE ROLLA understands that the legal elements for conspiracy, 18 U.S.C. § 371, are as follows:

a.      an agreement;

b.      between two or more people;

5

       c.      to violate the law, in this case the Clean Air Act; and

       d.      an overt act committed in furtherance of the conspiracy.

     6.     **Factual Basis for the Plea.** MIKE ROLLA admits the following facts, which establish his guilt for the offense stated in the Information.

       a.     MIKE ROLLA admits that at all times relevant to this case he is a licenced attorney, and has a background in accounting. He is the President of GEM Industries, Inc. and of RHO, Ltd, the latter owning a manufacturing facility in Gardner, Massachusetts.  GEM Industries, Inc. wholly owns GEM Industries NE, Inc., GEM Industries NE, Inc., owns a controlling interest in Mohawk Furniture Company, Inc., a manufacturing company, with facilities in Broadalbin, NY, in the Northern District of New York.  The President/General Manager of Mohawk Furniture reports to and operates under the direction of MIKE ROLLA.

       b.     In Gardner, Massachusetts, RHO Industries, Inc., has a manufacturing building referred to as the "B Plant." The B Plant has a boiler system with related pipes that run throughout the building. Until approximately March-April 2005, the pipes and boiler were covered with far more than 260 linear feet and 160 square feet of insulation containing regulated asbestos containing material (RACM, hereafter asbestos).

       c.     In approximately March-April 2005, MIKE ROLLA was considering demolishing or selling the "B Plant" building for business reasons. MIKE ROLLA was aware that this building had substantial quantities of asbestos, and that either the demolition or the

sale of the property would cost him substantial money if such occurred without first removing the asbestos. MIKE ROLLA therefore spoke to a business friend who informed him of an individual, John Brewer, who would perform the asbestos removal inexpensively or "cheaply."

        d.     MIKE ROLLA contacted John Brewer who offered to remove the asbestos but only "on a weekend, off the books." MIKE ROLLA consciously avoided making inquiries or taking other action to ensure that the asbestos removal work would be performed in accordance with legal requirements because the amount of money to be paid and the circumstances surrounding the hiring of Brewer led MIKE ROLLA to conclude that it would not be done properly. Brewer offered to do all the asbestos removal work for $9,700, but in cash only. MIKE ROLLA agreed to pay this amount in cash, without receiving any written bid or entering into any written contract, and without obtaining bids from any licensed asbestos abatement companies. ROLLA neither generated nor requested any document, including an invoice, from which his company could take a tax deduction for this business expense. MIKE ROLLA made no inquiry about Brewer's regular profession and MIKE ROLLA did not have any reason to conclude that Brewer was licensed to remove asbestos, although ROLLA believed such licensor was required by law.

        e.     Just prior to the work, Brewer called MIKE ROLLA and advised that he could not do the work but that he had a partner [Frank Russo] who could. Without making any inquiries and without learning anything about the partner, including his name,

occupation, and whether he was employed with a company licensed to remove asbestos or had an asbestos license himself, MIKE ROLLA agreed to have the partner do the work. MIKE ROLLA again consciously avoided making inquiries or taking other action to ensure that the asbestos removal work would be performed in accordance with legal requirements because the amount of money and circumstances of the hiring of Mr. Brewer's partner led MIKE ROLLA to conclude that it would not be done properly. To effectuate payment, the partner, who MIKE ROLLA had never met previously, identified the color of the his pickup truck in a telephone call to MIKE ROLLA, and the two met at a pre-arranged location, where MIKE ROLLA handed over the cash from his personal bank account. He obtained no receipt or other documentation.

        f.     During approximately March or April 2005, Brewer's partner [Frank Russo] and crew, without first inspecting the job, and without anyone including the partner or MIKE ROLLA having notified the U.S. Environmental Protection Agency as required by law, stripped, bagged, removed and disposed of the asbestos in Plant B. MIKE ROLLA did nothing to prevent improper and illegal asbestos removal methods. He does not dispute evidence subsequently shown to him, that the work methods of Russo and his crew constituted a "rip and run" asbestos abatement, in that they stripped the asbestos dry, bagged it dry, failed to accurately label the bags, built no containment, used no air monitoring company and did not otherwise engaged in air monitoring or the obtaining of laboratory analysis, scattered asbestos fibers throughout the work area, left substantial asbestos

8

remnants behind on the floor throughout the work area, and utilized no decontamination units to decontaminate the bags of asbestos or themselves from asbestos remaining on them as they left the work area into the outside environment. Thereafter, Russo and his workers did not dispose of the asbestos properly.  In the months following this asbestos abatement, individuals who had no knowledge of the asbestos remaining scattered about the building, entered it without respiratory or other protection.

g.    The Mohawk Manufacturing Company, Inc., Broadalbin NY, is comprised of three main structures, a manufacturing plant, an office building and a large warehouse.

h.    In August 2005 MIKE ROLLA wished to either sell or demolish these buildings. Due to prior warnings about the presence of asbestos in Mohawk Furniture Buildings by officials at the Occupational Health and Safety Administration (OSHA), and due to warning signs that OSHA had required be posted throughout the manufacturing building, MIKE ROLLA knew that the Mohawk Furniture buildings contained substantial quantities of asbestos. Accordingly, to save money, MIKE ROLLA again contacted John Brewer to employ him to remove the asbestos. Again, MIKE ROLLA consciously avoided asking any questions or taking other actions to ensure that the asbestos removal work would be done in accordance with law because the amount of money and circumstances of the hiring of Mr. Brewer led MIKE ROLLA to conclude it would not be done properly.  Because neither Brewer nor his partner wished to take the time to travel to New York State to inspect

9

the project to determine the amount of asbestos prior to the work, MIKE ROLLA directed the Mohawk Furniture President/General Manager measure the amount of asbestos on the pipes. The asbestos removal project involved approximately 2000 linear feet in just the manufacturing building. MIKE ROLLA and Brewer agreed upon the sum of $30,000 to remove the asbestos. Again, MIKE ROLLA agreed to pay Brewer in cash, without a bid, without signing a contract and without obtaining any bids from any licensed asbestos abatement companies.

      i.     As with the earlier project, during August 2005, Brewer and his partner, Frank Russo, and their crew, without having first inspected the job and without anyone, including MIKE ROLLA, having notified the U.S. Environmental Protection Agency as required by law, stripped, bagged, removed and disposed of the asbestos in the three Mohawk Furniture buildings.  MIKE ROLLA did nothing to prevent improper and illegal asbestos removal methods. He does not dispute evidence subsequently shown to him, that their work methods again constituted a "rip and run" asbestos abatement.  They stripped the asbestos dry, bagged it dry, failed to accurately label the bags, built no containment, used no air monitoring company nor otherwise engaged in air monitoring nor obtained laboratory analysis, scattered asbestos fibers throughout the work area, left substantial asbestos remnants behind on the floor throughout the work area, and utilized no decontamination units to decontaminate the bags or themselves from asbestos remaining on them as they left the work area into the outside environment. Thereafter, Brewer, Russo and their crew did not

dispose of the asbestos properly. Individuals with no knowledge of the asbestos remaining scattered about the buildings, entered them without respiratory or other protection.

7.    The Defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth above in paragraph 6, shall be admissible and useable against the Defendant by the United States in any subsequent criminal or civil proceeding, even if he fails to enter a guilty plea pursuant to this Agreement, or if such a guilty plea is later vacated or withdrawn. The Defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent these rules are inconsistent with this paragraph or with this Agreement generally.

8.    In exchange for the plea of guilty to the Information, and the defendant's continuing compliance with all of the terms of this Plea Agreement, the United States Attorney's Office for the Northern District of New York agrees as follows:

a.    It will bring no further federal criminal charges against the Defendant for conduct related to Clean Air Act violations at the GEM B Plant and Mohawk Furniture facilities or with regard to any false statements made to the United States related to such illegal Clean Air Act violations.

b.    If the guilty plea to the Information is later withdrawn or vacated, the charge dismissed, any charge not prosecuted pursuant to this Agreement may be prosecuted, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the reinstatement of any such charges.  The Defendant waives any defense

11

or objection to the reinstatement and prosecution of any such charges that are not time-barred by the applicable statute of limitations as of the date of this Agreement.

        c.     It reserves the right to recommend a specific sentence.

        d.     The U.S. Attorney's Office reserves the right to advise the sentencing Court and the Probation Office of any information, in aggravation or mitigation of sentencing, whether or not encompassed within the Information.

        e.     At or before the time of sentencing, the U.S. Attorney's Office will advise the Court of the nature and extent of the cooperation and assistance provided by MIKE ROLLA pursuant to this Agreement. If the U.S. Attorney's Office determines, in its sole discretion, that the Defendant has provided "substantial assistance" in the investigation or prosecution of other persons who have committed offenses, it may, in its sole discretion, recommend a downward departure pursuant to U.S.S.G. § 5K1.1. However, the U.S. Attorney's Office has not promised that such a motion will be made.

        i.     In deciding whether the Defendant has provided "substantial assistance" warranting a motion for a downward departure under § 5K1.1, the U.S. Attorney's Office may consider any fact that, in its sole discretion, it deems relevant, including facts known to this Office at the time of the execution of this Agreement. However, the decision of the U.S. Attorney's Office with respect to a motion for a downward departure will not be conditioned upon any particular outcome of any criminal investigation or prosecution.

ii.     If the sentencing of the Defendant is conducted before he has, in the judgment of the U.S. Attorney's Office, completed his/her cooperation, the U.S. Attorney's Office may, in its sole discretion, decline to make a motion for a downward departure under § 5K1.1 and defer its determination as to whether the Defendant has provided "substantial assistance" warranting a motion for a downward departure under Fed. R. Crim. P. 35(b) for up to one year after sentencing.

iii.     Should the U.S. Attorney's Office decide to make a motion for downward departure, its recommendation as to the extent of such a departure is a matter within the sole discretion of the United States Attorney.

iv.     Even if a motion for departure is made by the U.S. Attorney's Office, based upon the Defendant's perceived "substantial assistance," the final decision as to how much, if any, reduction in sentence is warranted because of that assistance, rests solely with the sentencing Court.

9.     If the Defendant continues to demonstrate "acceptance of responsibility" for the offense of conviction through the time of sentencing, the U.S. Attorney's Office will recommend a 2-level downward adjustment pursuant to U.S.S.G. § 3E1.1(a).   If the Defendant promptly enters a plea of guilty, thereby permitting the U.S. Attorney's Office to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently, the U.S. Attorney's Office will move for an additional downward adjustment of 1 level pursuant to U.S.S.G. § 3E1.1(b)(2).

13

a.      The Defendant's Criminal History Category cannot be definitively determined prior to the completion of the presentence investigation.

10.     Should the U.S. Attorney's Office determine that the Defendant, after the date of this Plea Agreement, (i) has committed any further crime or violated any condition of release or supervision imposed by the Court (whether or not charged); (ii) has given false, incomplete, or misleading testimony or information; or (iii) has otherwise breached any condition of this Agreement, the U.S. Attorney's Office will have the right, in its sole discretion, to void this Agreement, in whole or in part.  In the event of any such breach, the Defendant will not be permitted to withdraw his/her guilty plea under this Agreement, but will thereafter be subject to prosecution for any federal criminal violation of which the U.S. Attorney's Office has knowledge, including but not limited to charges that this Office has agreed to not to prosecute via this Agreement.

a.      The Defendant waives any defense or objection to the commencement of any such prosecution that is not time-barred by the applicable statute of limitations as of the date of this Agreement, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of any such prosecution.

b.      Moreover, in connection with any such prosecution, any information, statement, or testimony provided by the Defendant, and all leads derived therefrom, may be used against him/her, without limitation.  The Defendant waives any rights under Fed. R.

14

Crim. P. 11(f) and Fed. R. Evid. 410, to the extent these rules are inconsistent with this paragraph or with this Agreement generally.

        c.     In the event of any such breach by the Defendant, the U.S. Attorney's Office will have the right, in its sole discretion, to do the following, notwithstanding any contrary provision or stipulation in this Plea Agreement:

        i.     to advocate if, and how, any particular adjustment or specific offense characteristic affects the applicable Sentencing Guidelines range;

        ii.     to decline to move for and/or to withdraw a motion for a downward departure under U.S.S.G. § 5K1.1, even if the Defendant had provided "substantial assistance" to the United States prior to breaching any term of this Agreement;

        iii.     to recommend a specific sentence of imprisonment within or above the applicable Sentencing Guidelines range determined by the Court.

        11.     This Agreement is limited to the U.S. Attorney's Office for the Northern District of New York and cannot bind other federal, state or local prosecuting authorities. Furthermore, this Agreement does not prohibit the United States, any agency thereof, or any third party from initiating or prosecuting any civil or administrative proceedings directly or indirectly involving the Defendant.

        12.     The Court is not bound by any recommendation, stipulation, or request made by the parties, pursuant to Fed. R. Crim. P. 11(c)(1)(B), as to the appropriate sentence, and the Defendant may not withdraw his/her plea of guilty if the Court declines to follow any

15

such recommendation, stipulation, or request. The U.S. Attorney's Office reserves the right to support and defend, in connection with any post-sentencing proceedings, any decision the Court may make with regard to the Defendant's sentence, whether or not such decision is consistent with this Office's recommendations, stipulations, or requests.

13.    The Defendant acknowledges that he has read each of the provisions of the entire Plea Agreement with the assistance of counsel and understands its provisions.

a.    The Defendant understands his right to assistance of counsel at every stage of the proceeding and has discussed his/her constitutional and other rights with defense counsel. The Defendant understands that by entering a plea of guilty, he will be giving up his rights (i) to be presumed innocent until proven guilty beyond a reasonable doubt; (ii) to plead not guilty; (iii) to trial by jury; (iv) to confront, cross-examine, and compel the attendance of witnesses at trial; (v) to present evidence in his/her defense; and (vi) to remain silent and refuse to be a witness against him by asserting the privilege against self-incrimination.

b.    The Defendant has been advised by defense counsel of the nature of the charges to which he is entering a guilty plea and the nature and range of the possible sentence. The Defendant understands the sentencing Court's obligation to consider the United States Sentencing Guidelines (as explained further in paragraph 2h above) and the Court's discretion to depart from those Guidelines under some circumstances or otherwise to impose a reasonable sentence outside of the applicable Sentencing Guidelines range.

16

14.   **Waiver of Appeal and Collateral Attack.** The Defendant acknowledges that, after consultation with defense counsel, he fully understands the extent of his rights to appeal, and/or to collaterally attack the conviction and sentence in this case, including by a challenge based upon *United States v. Booker* and *United States v. Fanfan*, 534 U.S. __, 125 S. Ct. 738 (January 12, 2005) and their progeny.  The Defendant waives any and all rights, including those conferred by 18 U.S.C. § 3742 and/or 28 U.S.C. § 2255, to appeal or collaterally attack his conviction and any sentence of imprisonment of 51 months or less, including any related issues with respect to the establishment of the advisory Sentencing Guidelines range or the reasonableness of the sentence imposed. The United States waives its right to appeal a guideline sentence of imprisonment of less than 30 months. The Defendant acknowledges that the number of months specified above is not a promise of any particular sentence and is not binding on the Court.  The Defendant agrees that, should the sentence imposed exceed 46 months, this would not permit him to withdraw his guilty plea or to appeal or collaterally attack his conviction, but would merely allow the Defendant to appeal or collaterally attack the sentence imposed by the Court, to the extent permitted by 18 U.S.C. § 3742 and/or 28 U.S.C. § 2255.

15.   No promises, agreements or conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless memorialized in writing and signed by all parties.  This Agreement, to become effective, must be signed by all of the parties listed below.

17

GLENN T. SUDDABY
United States Attorney
Northern District of New York

Dated: ____9/26____, 2006          By: _____
                                       Craig A. Benedict
                                       Assistant U.S. Attorney
                                       Bar Roll No. 101130


Dated: ___august 28___, 2006       _____
                                   MARIO ROLLA, also known as
                                   MIKE ROLLA
                                   Defendant


Dated: ___August 29___, 2006       _____
                                   Kevin Murphy, Esq.
                                   Attorney for Defendant
                                   Bar Roll No.

18